**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Staci Martin, | No. CV-21-08244-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Arise Incorporated, et al., | |
| Defendants. | |

This case arises out of the Family Medical Leave Act, 26 U.S.C. § 2601 *et seq.* ("FMLA") and the Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-371 *et seq.* ("AFWHFA"). Plaintiff Staci Martin ("Plaintiff") brought the following claims against Defendants Arise Incorporated f/k/a Rise Services, Inc. d/b/a Rise Services ("RISE"); Jessica Reed, RISE Regional Director ("Defendant Reed"); and Angela Pelton, RISE Program Administrator ("Defendant Pelton") (collectively "Defendants"): Count One for interference with Plaintiff's rights under the FMLA; Count Two for retaliation after Plaintiff requested medical leave under the FMLA; and Count Three for retaliation after Plaintiff used protected leave under the AFWHFA. Defendants have filed a Motion for Summary Judgment (Doc. 34)[1] on all three of Plaintiff's Counts as well as her claim for punitive damages. The Court finds that triable issues of fact remains for the jury and will grant Defendants' Motion only in part.

/ / /

---

[1] The matter is fully briefed. (*See* Response at Doc. 35 and Reply at Doc. 36).

## I. Background

Below is a timeline of Plaintiff's employment history and the underlying events that transpired during her employment at RISE.

### A. Plaintiff's Employment History

Plaintiff has worked at four companies: (1) New Horizons; (2) Public Partnerships, LLC ("PPL"); (3) ACHIEVE Human Services ("ACHIEVE"), which was later acquired by RISE; and (4) RISE. All companies provided services to clients with special needs, including to former client C.B. Plaintiff's employment at PPL overlapped with her employments at ACHIEVE and RISE. Plaintiff no longer works for any of these companies. (Doc. 34-1 at 11).

#### 1. New Horizons

Plaintiff worked at New Horizons until 2013 as a Day Time Activities ("DTA") Coordinator for adult clients with special needs. (Doc. 35-1 at 4–6). She also worked in group homes and provided attendant care to individual clients in their respective homes. (*Id*. at 5). Furthermore, she provided "habilitation" services, which involved teaching clients goals while out in the community or in their homes. (*Id*. at 5–6).

#### 2. Public Partnerships, LLC

Plaintiff began working at PPL in 2014. (Docs. 34-1 at 10; 35-1 at 6). She provided attendant care, habilitation services, and respite services to clients.[2] (Doc. 34-1 at 17).

#### 3. ACHIEVE Human Services

Plaintiff began working at ACHIEVE in 2014. (Docs. 34-1 at 10; 35-1 at 6). ACHIEVE provided DTA and "group support employment" services to clients. (Doc. 34-1 at 17). ACHIEVE was acquired by RISE in 2017. (*Id*. at 10).

#### 4. RISE Services

Plaintiff began working at RISE in 2017, when RISE acquired ACHIEVE. (*Id*.) RISE is funded through the Arizona Department of Economic Services, Division of

---

[2] The parties do not define respite services. According to Merriam-Webster Dictionary, a respite worker provides "temporary care in relief of a primary caregiver." *Respite*, Merriam-Webster, https://www.merriam-webster.com/dictionary/respite (last visited June 6, 2023).

Developmental Disabilities ("DDD").  (Doc. 34 at 4).  "DDD develops individualized service plans (ISPs) with input from the client, their caregivers, and other providers.  DDD, in its ISPs, identifies how many hours it will allocate to each service provider.  This determines what services [RISE] will provide to a client, and how much DDD will compensate RISE for these services."  (Doc. 34-1 at 94, 99).

Plaintiff continued her employment as a DTA Coordinator at RISE.  (*Id*. at 10, 12).  Her responsibilities were to attend ISPs, maintain client records, tend to RISE buildings and vehicles, and create weekly and monthly DTA programs for clients.  (*Id*. at 12–14).  Plaintiff also oversaw Direct Support Professionals ("DSPs") and placed DSPs into clients' homes to carry out the DTA and habilitation programs.  (*Id*. at 15–16).  Plaintiff also worked directly with clients.  (*Id*. at 15).

As a condition of her employment at RISE, Plaintiff signed a Non-Solicitation Agreement that prohibits employees from soliciting RISE clients or otherwise competing with RISE.  (*Id*. at 56–59).  The Agreement prohibits the following:

> [A RISE] Employee will not directly or indirectly, solicit Clients to purchase the types of services and/or products offered by the [RISE], including without limitation the provision of in-home, managed care, daily care, community based support services and any other services provided by [RISE.]

(*Id*. at 57).  Furthermore, the RISE Employee Handbook implements policies regarding conflicts of interest ("Conflict of Interest Policy") (*Id*. at 77–78).  The Conflict of Interest Policy requires employees to "promptly disclose to RISE information regarding any relationship . . . that the employee . . . has with any person, or in any business or enterprise, that: competes with [RISE]."  (*Id*. at 77).  Upon an employee's disclosure, RISE would "take appropriate steps to protect against any actual or potential conflict of interest."  (*Id*.)

### 5. Client C.B.

Plaintiff provided services to client C.B. throughout her various employment positions.  From 2007–2013, Plaintiff provided DTA, habilitation, and respite services to C.B. while working at New Horizons.  (Doc. 35-1 at 52).  From 2014–2021, Plaintiff

provided multiple services to C.B. while working at PPL and RISE. C.B received habilitation, respite, and attendant care services from Plaintiff through PPL, and DTA services from Plaintiff through RISE. (*Id*. at 53, 57 (C.B's ISP developed through DDD)). DDD Supervising Coordinator Marcus Polychuk ("the DDD Coordinator") worked to coordinate the services C.B. received from PPL and RISE. (Docs. 35-1 at 56; 34-1 at 52).

### B. Plaintiff's Medical Leave History at RISE

In 2020, Plaintiff notified her supervisor, RISE Regional Director Defendant Reed, that her father was ill and she needed to take leave to care for him. (Doc. 34-1 at 20, 92). Defendant Reed permitted Plaintiff to "flex" her time around her work schedule so she could drive her father to his treatments out of state. (*Id*. at 20). Plaintiff also took 34.75 hours of paid sick time leave in 2020. (*Id*. at 43, 93).

Between January 1, 2021–February 23, 2021, Plaintiff took 44.08 hours of paid sick time leave so she could care for her father. (*Id*. at 41, 93). Defendant Reed approved this leave and also offered to Plaintiff that she could self-demote from the DTA Coordinator position and continue to work as a DSP if "under the circumstances, her supervisory duties were too stressful." (*Id*. at 36, 93). Plaintiff declined. (*Id*. at 36).

On or around February 10, 2021, Plaintiff notified RISE of her intent to take FMLA leave to take care of her father. (*Id*. at 93). On February 17, 2021, Plaintiff formally submitted her Request for Leave and Health Care Certification under the FMLA. (*Id*. at 46–50). Defendant Reed granted Plaintiff's request and Plaintiff was permitted to take FMLA leave from February 23, 2021–May 1, 2021. (*Id*. at 46). Before Plaintiff went on FMLA leave, she was asked to leave her laptop, company credit card, and keys at the RISE office. (*Id*. at 85–86). Her access to RISE's internal communication platforms was also restricted. (Doc. 35-1 at 65). Plaintiff expressed concern of this treatment to the HR Department. (*Id*.)

### C. Plaintiff's Termination at RISE

On March 5, 2021, RISE terminated Plaintiff due to her alleged violation of RISE's Non-Solicitation Agreement and Conflict of Interest Policy for the services provided to

C.B. (Doc. 34-1 at 54 (Termination Documentation), 61–63 (Personnel Action Form)). Defendants represent they terminated Plaintiff because on March 3, 2021, the DDD Coordinator requested to remove C.B.'s DTA hours through RISE so that C.B. could get more attendant care hours from Plaintiff through PPL. (*Id*. at 54). Based on these representations, RISE determined that Plaintiff was "actively engaging in the solicitation of [its] members and [] promoted the parents to request a release so they can leave RISE and participate in Plaintiff's program" at PPL. (*Id*.) Defendant Reed, RISE Program Administrator Defendant Pelton, and RISE Executive Director Salazar were the supervisors involved in the decision to terminate Plaintiff. (Doc. 34 at 11).

Plaintiff filed suit against Defendants alleging Count One for interference of her rights under the FMLA (Doc. 1 at ¶¶ 26–38); Count Two for retaliation under the FMLA (*Id*. ¶¶ 39–44); and Count Three for retaliation under the AFWHFA (*Id*. ¶¶ 45–51). Plaintiff seeks damages such as lost wages and employment; compensatory damages for her emotional distress and pain and suffering; statutory penalties; punitive damages; liquidated damages, and attorney fees. (Id. at ¶¶ A–I). The Court now considers Defendants' Motion for Summary Judgment on all three of Plaintiff's Counts as well as her request for punitive damages.

**II.     Legal Standard for Summary Judgment**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Celotex Corp.*, 477 U.S. at 324 (holding the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial"). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"[W]here [] the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). The standard for granting summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)[.]" *Celotex*, 477 U.S. at 323.

**III. Discussion**

Defendants urge the Court to grant them summary judgment on all three of Plaintiff's Counts for FMLA interference, FMLA retaliation, and AFWHFA retaliation as well as her claim for punitive damages. As a procedural matter, Plaintiff argues Defendants' Motion is defective because it is based on inadmissible hearsay evidence. (Doc. 35 at 3). Plaintiff also contends that Defendants' hearsay evidence raises disputes of material fact regarding Defendants' reason for terminating her. (*Id.* at 4–6). The Court will first address Plaintiff's hearsay argument to clarify the scope of Defendant's Motion. The Court will then turn to the merits of each of Plaintiff's Counts and conclude with her

claim for punitive damages.

### A. Whether a Motion for Summary Judgment Can be Based on Hearsay Evidence

In their Motion, Defendants rely on a signed declaration by Defendant Pelton that summarizes a conversation she had with the DDD Coordinator regarding C.B.'s ISP. Plaintiff argues the Court should not consider evidence of the DDD Coordinator's communications in this form because it constitutes inadmissible hearsay. (*Id*. at 2–3). Plaintiff further notes that Defendants subpoenaed C.B.'s DDD records, but did not attach those records to their Motion to prove the DDD Coordinator's representations. (*Id*. at 3).

Defendants contend that Defendant Pelton's summary of her conversation with the DDD Coordinator is admissible under the Federal Rule of Evidence 801(c)[3] to show Defendant Pelton's state of mind when deciding whether to terminate Plaintiff. (Doc. 36 at 4). Alternatively, Defendants posit it "is not necessary that the evidence be provided in a form that would be admissible at trial, so long as the contents would be admissible." (*Id*.)

Plaintiff cites to Arizona case law and the Arizona Rules of Civil Procedure and Evidence to posit affidavits containing hearsay cannot be considered at the summary judgment stage.[4] However, this Court is bound by the Federal Rules of Civil Procedure and Evidence. Federal Rule of Civil Procedure 56 allows a party to object to material that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The burden is then "on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 Amendment. Thus, at the summary judgement stage, the contents of arguably inadmissible evidence may be considered so long as it can be

---

[3] Although Defendants cite to Federal Rule of Civil Procedure 801(c), the Court assumes they meant to cite to the Federal Rules of Evidence.

[4] Plaintiff cites to the following authorities: *Comerica Bank v. Mahmoodi*, 229 P.3d 1031 (Ct. App. 2010); *Jabczenski v. S. Pac. Mem'l Hosps.*, 579 P.2d 53 (Ariz. Ct. App. 1978); *Wells Fargo Bank, N.A. v. Allen*, P.3d 195 (Ariz. Ct. App. 2012); Ariz. R. Civ. P. 56(e); Ariz. R. Evid. 602; Ariz. R. Evid. 801; and Ariz. R. Evid. 802. (Doc. 35 at 2).

- 7 -

presented in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1037–38 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.") (citing *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) ("[H]earsay evidence produced in an affidavit may be considered on summary judgment if the declarant could later present the evidence through direct testimony[.]").

Thus, the relevant issues are: (1) whether Defendant Pelton's declaration contains inadmissible hearsay evidence; and (2) if so, whether the contents of Defendant Pelton's declaration can be presented in an admissible form at trial.

### 1. Defendant Pelton's Declaration Constitutes Inadmissible Hearsay

Hearsay is not admissible unless otherwise provided by the Federal Rules of Evidence. Fed. R. Evid. 802. Rule 801(c)[5] defines hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Rule 803 provides exceptions to the rule against hearsay, one being "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3).

Defendants represent they terminated Plaintiff due to the DDD Coordinator's request on March 3, 2021, to revise C.B.'s ISP. (Doc. 34-1 at 54). Defendants did not submit a declaration by the DDD Coordinator in support of their Motion. The only supporting evidence is found in Defendant Pelton's declaration (*Id.* at 106–09), which summarizes the following conversation with the DDD Coordinator:

> On March 3 2021, I received notice from the DDD Support Coordinator Marcus Polychuk stating his intention to remove Rise as a provider of DTA hours, in order to increase the attendant care [] hours being allocated to [Plaintiff], who was also providing services through another company, PPL. . . . I called [] Polychuk, [and he], explained to me that he had received

---

[5] Except where otherwise noted, all Rule references are to the Federal Rules of Evidence.

> a request from both [Plaintiff] and [C.B.'s parents] to request the release of time [and] to reallocate the hours from Rise to [Plaintiff]. During this call, Mr. Polychuk informed me that [Plaintiff] had been increasing the service hours requested through PPL from 5 hours to 30 hours, over time, but now her hours request competed with the services being provided by RISE. [] I then attempted to call the [C.B.'s] parents twice to discuss their request, but was unable to reach them. RISE has policies which prohibit competition and solicitation of clients. Based on DDD's report that Ms. Martin had requested that her ATC hours be increased to a level that resulted in RISE being terminated as a provider, I believe Ms. Martin was engaged in improper competition with RISE.

(*Id*. at 107–08).

The Court agrees with Plaintiff that such evidence constitutes hearsay: Defendant Pelton's summary involves out of court statements made by the DDD Coordinator that is offered to prove that C.B.'s DTA hours with RISE were removed because Plaintiff requested more attendant care hours with C.B. through PPL. (*Id*. at 54); *see* Fed. R. Evid. 801(c). In fact, the declaration constitutes *double* hearsay because it involves out of court statements by the DDD Coordinator recounting out of court statements by Plaintiff and C.B.'s parents. Moreover, none of this evidence falls within the hearsay exception to show Pelton's then-existing state of mind. Defendants intend to use this evidence to prove the fact that they reasonably believed Plaintiff violated the Non-Solicitation Agreement, which necessarily turns on the truth of the matter being asserted by the DDD Coordinator. (*Id*.); *see also* Fed. R. Evid. 803(3).

**2. Double Hearsay Cannot be Presented at Trial in Admissible Form**

Second, the contents of Defendant Pelton's declaration cannot be presented in an admissible form at trial. It may be true that Defendant Pelton's account of her conversation with the DDD Coordinator could be presented through direct testimony. But this would only cure some—not all—of the hearsay deficiencies in the declaration. As double hearsay, Defendant Pelton's account of the DDD Coordinator recounting his conversations with Plaintiff and C.B.'s parents cannot be presented in admissible form at trial. *See Brazill v. Cal. Northstate Coll. of Pharmacy, LLC*, 949 F. Supp. 2d 1011 (E.D. Cal. 2013) (finding

no admissible form of double hearsay at trial).

Accordingly, Defendant cannot base its arguments for summary judgment on Polyhcuk's purported request on March 3, 2021, to revise C.B.'s ISP, as summarized by Defendant Pelton' declaration (Doc. 34-1 at 106–09). *Fraser*, 342 F.3d at 1037–38. The Court will not consider such evidence when evaluating the merits of Plaintiff's claims.

### B. Interference of Rights Under the Family Medical Leave Act

Plaintiff's Count One alleges that Defendants interfered with her FMLA rights when they retaliated against her by terminating her after she requested leave; encouraging her to resign upon her use of her paid sick time leave; and requiring her to return her company equipment prior to her leave. (Doc. 1 at ¶¶ 32–34). Defendants argue they did not interfere with Plaintiff's rights because they granted her FMLA leave and rather terminated her for disciplinary reasons. (Doc. 34 at 6–10).

An employee brings an "interference" or "entitlement" claim under the FMLA when she alleges a violation of Section 2615(a)(1).[6] *Sanders v. City of Newport*, 657 F.3d 772, 777–778 (9th Cir. 2011) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001)). The relevant part of Section 2615(a)(1) provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by FMLA. The FMLA creates two substantive employee rights: "[f]irst, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder*, 259 F.3d at 1122.

The FMLA does not provide an employee with any additional rights, benefits, or positions that they would not have been entitled to had they not taken protected leave. *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2614(a)(3)(B)). "It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions." *Id*. Thus, Section 2615(a)(1) prohibits an employer from considering an employee's "taking of FMLA leave as a

---

[6] Except where otherwise noted, all Section references are to the FMLA, 26 U.S.C. § 2601 *et seq*.

negative factor in employment actions, such as . . . disciplinary actions[.]" *Bachelder*, 259 F.3d at 1122. An employer also interferes with an employee's FMLA rights when it discourages her from using such leave. *Xin Liu*, 347 F.3d at 1133.

An employee can prove an interference claim "by using either direct or circumstantial evidence, or both." *Sanders*, 657 F.3d at 778 (declining to apply the burden shifting framework recognized in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to FMLA interference claims) (citing *Xin Liu*, 347 F.3d at 1136). To establish a *prima facie* case for an FMLA interference claim, an employee must show that: "(1) [s]he was eligible for the FMLA's protections, (2) h[er] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of her intent on taking leave, and (5) h[er] employer denied h[er] FMLA benefits to which [s]he was entitled." *Id.* (citing *Burnett v. L.F.W. Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).

It is undisputed that Plaintiff meets the first, second, and third elements. Defendants argue, however, that Plaintiff cannot establish the fourth and fifth elements with respect to her leave request. The Court disagrees.

### 1. Notice of FMLA Leave

The fourth element requires Plaintiff to give RISE sufficient notice of her FMLA leave. In terms of timing, "[a]n employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on . . . planned medical treatment for a serious health condition of the employee or of a family member." 29 C.F.R. § 825.302(a). In terms of substance, "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Sufficient information for leave for a family member is "that the condition renders the family member unable to perform daily activities . . . ; and the anticipated duration of the absence, if known." *Id.*

When an employee seeks leave for the first time for a FMLA-qualifying reason, as here, "the employee need not expressly assert rights under the FMLA or even mention the

FMLA." *Id*. She "need only notify [her] employer[] that [she] will be absent under circumstances which indicate that the FMLA might apply." *Bachelder*, 259 F.3d at 1130 (citing 29 § C.F.R. 825.302(c)). It is then the employer's responsibility to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." *Id*. at 1131.

Here, the parties do not dispute that Plaintiff's reason for leave—to take care of her father—is a qualifying reason under the FMLA. Defendant rather argues Plaintiff did not abide by the thirty-day-notice requirement because she requested leave on February 10, 2021, "just 13 days before she intended to take her leave." (Doc. 34 at 7). The Court disagrees. Although February 10, 2021, may have been the date that Plaintiff *expressly* referenced the FMLA, RISE had been aware of Plaintiff's ongoing need for leave accommodations to care for her father as early as December 2020. (Doc. 34-1 at 20, 92). Indeed, Plaintiff was granted 44.08 hours of paid sick time between January 1, 2021–February 23, 2021, so she could care for her father. (*Id*. at 41, 93). Under *Bachelder*, Defendants were put on sufficient notice well past the 30-day requirement. It was then Defendants' responsibility to inquire of Plaintiff whether FMLA leave would be necessary. *Bachelder*, 259 F.3d at 1131.

The Court therefore rejects Defendants' argument that Plaintiff cannot meet element four as a matter of law.

### 2.     Denial of FMLA Benefits

The fifth element requires Plaintiff to prove that RISE "denied h[er] FMLA benefits to which [s]he was entitled." *Sanders*, 657 F.3d at 778. "The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Id*. (internal quotations and citations omitted). Thus, evidence that RISE failed to reinstate Plaintiff to her position after she was out on FMLA establishes a *prima facie* denial of Plaintiff's

FMLA rights. *Id*. The burden is on Defendants to show they had a "legitimate reason" to deny Plaintiff reinstatement. *Id*. at 780.

Plaintiff alleges Defendants violated her FMLA rights by terminating her while she was on FMLA leave. Defendants counter they had a legitimate reason to terminate Plaintiff that is unrelated to her FMLA leave request. They say they had an "honest and reasonable belief that Plaintiff violated the [N]on-solicitation agreement" and caused RISE to lose C.B. as a client. (Doc. 34 at 8). For support, Defendants point to the DDD Coordinator's March 3, 2021, revision of C.B.'s ISP, which removed the DTA services provided by RISE and increased the attendant care services provided by Plaintiff through PPL. (Doc. 34-1 at 54).

The only evidence detailing the DDD Coordinator's request on March 3, 2021, is in Defendant Pelton's declaration (*Id*. at 107–08). The Court declines to consider such evidence because it constitutes double hearsay and cannot be presented in an admissible form at trial. *See supra* Section III.A. And irrespective of the improper evidence, there are also several issues of material fact regarding whether Plaintiff violated the Non-Solicitation Agreement when RISE lost C.B. as a client. For example, both Plaintiff and C.B.'s mother dispute that neither of them requested the DDD Coordinator to terminate C.B.'s DTA service hours with RISE. (Doc. 35-1 at 31, 50). They further dispute that Plaintiff did not request for increased attendant care hours with C.B. through PPL. (Doc. 35-1 at 25, 31, 49–50). Moreover, Plaintiff states that she complied with RISE's Conflict of Interest Policy by disclosing her concurrent employment with PPL to Defendants. (Docs. 35 at 4; 35-1 at 60–61, 63). Defendants concede they were aware of this, but dispute that Plaintiff's outside services to C.B. prior to March 2021 did not rise to the level where they interfered with or impacted RISE's operations. (Doc. 34-1 at 99–100). Last, while Defendant Pelton represents that she called C.B.'s parents twice to inquire about the request to cancel services from RISE (Doc. 34-1 at 52), Plaintiff and C.B.'s mother say RISE never reached out to C.B.'s parents on the matter. (Doc. 35-1 at 29, 50–51).

In sum, Defendants have not met their evidentiary burden for summary judgment on Count One because factual disputes remain as to *prima facie* element five. *Celotex*, 477 U.S. at 323. The Court therefore rejects Defendants' argument that Plaintiff cannot meet element five as a matter of law. Count One for FMLA interference must be resolved at trial by the fact finder.

### C. Retaliation Under the Family Medical Leave Act

Plaintiff's Count Two alleges Defendants retaliated against her under the FMLA because after requesting FMLA leave, they subjected her to less favorable treatment[7] than similarly situated coworkers. (Doc. 1 at ¶¶ 40–41). Plaintiff argues she has met her burden to establish an FMLA retaliation claim by submitting evidence that she exercised her protected FMLA rights when she asked for leave, that she was terminated soon after taking FMLA, and there was a causal connection between her FMLA leave and termination. (Doc. 35 at 13). In their response, Defendants contend Plaintiff cannot prevail on her FMLA retaliation claim because taking FMLA leave does not constitute protected activity. They say Plaintiff failed to allege that she opposed unlawful practices under the FMLA or participated in FMLA enforcement proceedings. (Doc. 34 at 10–11). The Court agrees with Defendants.

First, Plaintiff relies on improper legal standards for FMLA retaliation claims. (Doc. 35 at 12).[8] Prohibited acts under Section 2615(a) fall into two general categories: (1) retaliation or discrimination claims under Section 2615(a)(2); and (2) interference claims under Section 2615(a)(1). *Latif v. M & C Hotel Interests, Inc.*, 2012 WL 893729, at *3 (C.D. Cal. Mar. 14, 2012). The Ninth Circuit has delineated the applicable standards for retaliation claims versus interference claims in *Bachelder v. Am. W. Airlines, Inc.*, 259

---

[7] Specifically, Plaintiff says Defendants asked her to resign; removed her access to company email and internal programs; instructed her to return her company keys, computer and credit card; and terminated her in the middle of her FMLA leave. (Doc. 1 at ¶¶ 40).

[8] For support, Plaintiff cites to the following non-binding authorities from the First and Sixth Circuits: *Gomes v. Steere House*, 504 F. Supp. 3d 15, 18 (D.R.I. 2020); *Hodgenvs v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998); *Henegar v. Daimler-Chrysler Corp.*, 280 F. Supp. 2d 680, 688 (E.D. Mich. 2003); *Skrjanc v. Great Lake Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001); and *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 719 (1st Cir. 2014). (Doc. 35 at 12).

- 14 -

F.3d 1112 (9th Cir. 2001).

Like Plaintiff, in *Bachelder*, the plaintiff alleged that the defendant "impermissibly considered her use of leave protected by the FMLA in its decision to terminate her." *Id*. at 1124. The Ninth Circuit clarified that the plaintiff's claim was one for interference under Section 2615(a)(1), *not* for retaliation or discrimination:

> Bachelder's claim does not fall under the "anti-retaliation" or "anti-discrimination" provision of § 2615(a)(2), which prohibits "discriminat[ion] against any individual for opposing any practice made unlawful by the subchapter"; nor does it fall under the anti-retaliation or anti-discrimination provision of § 2615(b), which prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries. By their plain meaning, the anti-retaliation or antidiscrimination provisions do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.

*Id*. (internal citations omitted) (alterations in original). The circuit court also rejected the defendant's argument to apply the *McDonnell Douglas* burden shifting framework[9] from anti-discrimination law, holding that such a framework was not proper to determine whether the defendant illegally "retaliated" against the plaintiff for using FMLA leave. *Id.* at 1125.

To survive summary judgment, Plaintiff needed to predicate her retaliation claim on allegations that she either: (1) opposed a practice carried out by Defendants that violated the FMLA; or (2) instituted or participated in FMLA proceedings or inquiries.[10] She has

---

[9] The *McDonnell Douglas* burden shifting framework is composed of three parts: (1) the plaintiff first bears the burden to establish a prima facie case of discrimination or retaliation; (2) the burden shifts to the defendant to identify a legitimate nondiscriminatory reason for the alleged adverse employment action; and (3) the burden shifts back to the plaintiff to show pretext. *See Sanders v. City of Newport*, 657 F.3d 772, 777 n.3 (9th Cir. 2011).

[10] Under the FMLA, an employee participates in a proceeding or inquiry when she "(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to [the FMLA]; (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under [the FMLA]; or (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under [the FMLA]." 29 § U.S.C. 2615(b).

- 15 -

not done either. The Court will therefore enter judgment on Count Two in favor of Defendant because Plaintiff's FMLA retaliation claim fails as a matter of law. However, to the extent Plaintiff alleges that Defendants considered her FMLA leave as a negative factor in employment actions, the Court will construe such allegations as subsumed into her Count One for FMLA interference.[11] And as discussed, Plaintiff's Count One must be resolved at trial because genuine disputes of material fact remain as to whether Defendants had a legitimate reason to terminate Plaintiff that is independent of the request for FMLA leave. *See supra* Section III.B(2).

### D. Retaliation Under the Arizona Fair Wages and Healthy Families Act

Plaintiff's Count Three alleges that Defendants retaliated against her under the AFWHFA after she took paid sick leave. The AFWHFA protects the first forty hours of sick leave taken by an employee each year. A.R.S. § 23-372(A); (*see also* Doc. 34-1 at 71, 74 (RISE's leave policy)). The AFWHFA further makes it "unlawful for an employer to retaliate or discriminate against an employee who has exercised their right to request or use earned paid sick time." *Kuramoto v. Heart & Vascular Ctr. of Arizona PC*, 2021 WL 2012668, at *5 (D. Ariz. May 20, 2021), *aff'd*, 2022 WL 17883605 (9th Cir. Dec. 23, 2022) (citing A.R.S. § 23-374(B)). If an employer takes adverse action against an employee within ninety days of the employee's use of protected paid sick time, it "shall raise a presumption that such action was retaliation, which may be rebutted by clear and convincing evidence that such action was taken for other permissible reasons." A.R.S. § 23-374(B).

Plaintiff represents that within ninety days of using her sick leave, Defendants

---

[11] *See, e.g.*, *Rieman v. Evraz, Inc.*, 848 Fed. App'x 306, 307 (9th Cir. 2021) ("We construe a claim like [the plaintiff's]—that a termination was motivated by an employee's use of protected leave—as an 'interference' claim, rather than a 'retaliation' claim."); *Hanson v. Oregon, Legislative Assembly*, 2023 WL 22196, at *23 (D. Or. Jan. 3, 2023) (applying FMLA interference standards to a retaliation claim on summary judgment); *Galloway v. Boise City*, 2022 WL 4585712, at *5 (D. Idaho Sept. 29, 2022) (finding the plaintiff's claim for retaliation and discrimination was "more accurately considered as an interference claim"); *Lavin v. United Techs. Corp.*, 2015 WL 847392, at *18 (C.D. Cal. Feb. 23, 2015) ("[W]hen a plaintiff alleges retaliation for exercise of FMLA rights, that claim is properly analyzed as an interference claim[.]").

subjected her to less favorable treatment[12] than similarly situated coworkers and terminated her. (Doc. 1 at ¶¶ 46–48). Defendants argue Plaintiff's AFWHFA retaliation claim fails for two reasons. First, Defendants argue the presumption under A.R.S. § 23-374(B) does not apply because "Plaintiff had already exhausted her Earned Paid Sick Leave prior to February 16, 2021" and "her February 22, 2021 FMLA leave was not protected under state law." (Doc. 34 at 12). Second, Defendants further contend it had a legitimate reason to terminate her due to her alleged violation of the Non-Solicitation Agreement. (*Id*. at 12–13). The Court disagrees with both of Defendants' arguments.

It is undisputed that Plaintiff took 44.08 hours of paid sick time between January 1, 2021–February 23, 2021. (Doc. 34-1 at 41, 93). It is also undisputed that RISE terminated Plaintiff on March 5, 2021. (*Id*. at 54 (Termination Documentation), 61–63 (Personnel Action Form)). Thus, the record shows that RISE took an adverse action against Plaintiff within ninety days of her use of forty hours of sick leave protected by the AFWHFA. *See* A.R.S. § 23-374(B). The fact that she also took an extra four hours of unprotected sick leave is immaterial. Plaintiff has established, at minimum, a rebuttable presumption that Defendants' actions were retaliatory under the AFWHFA. Moreover, the Court has already identified there are issues of material fact with respect to whether Plaintiff violated the Non-Solicitation Agreement when RISE lost C.B. as a client. Defendants therefore cannot rebut the presumption of retaliation with "clear and convincing evidence" that its termination of Plaintiff was carried out "for other permissible reasons." A.R.S. § 23-374(B).

In sum, Defendants have not met their evidentiary burden for summary judgment on Count Three because factual disputes remain as to whether Defendants can overcome the presumption of retaliation under the AFWHFA. *Celotex*, 477 U.S. at 323. Count Three must be resolved at trial.

/ / /

---

[12] Specifically, Plaintiff says Defendants asked her to resign; removed her access to company email and internal programs; and instructed her to return her company keys, computer and credit card. (Doc. 1 at ¶ 47).

- 17 -

### E. Punitive Damages

Last, Defendants seek judgment on Plaintiff's claim for punitive damages. Plaintiff states she is entitled to punitive damages because Defendants' actions were "willful, wanton, malicious, and in reckless disregard of Plaintiff's rights" under the FMLA and AFWHFA. (Doc. 1 at ¶¶ 38, 44, 51). First, it is well settled that the FMLA "only provides compensatory damages and not punitive damages." *Xin Liu*, 347 F.3d at 1133 n.6 (citing 29 U.S.C. § 2617(a)). Thus, Plaintiff cannot recover this type of relief under her FMLA interference claim.

Second, as to Plaintiff's state law claim, the Arizona Supreme Court has stated that "[t]o recover punitive damages, the plaintiff must prove that defendant acted with the requisite evil mind 'by clear and convincing evidence.'" *Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 210 (1992) (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (1986)). When considering a motion for summary judgment on a claim for punitive damages, "the evidence and all reasonable inferences that may be drawn from the evidence should be construed in a light most favorable to the non-moving party." *Id.* at 211. "[T]he judge is not a fact finder," thus "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As explained, disputes of material fact remain with respect to the underlying allegations of Plaintiff's AFWHFA retaliation claim. *See supra* Section III.D. Therefore, the Court finds it is premature to enter judgment on the issue of punitive damages under the AFWHFA.

### IV. Conclusion

Plaintiff has failed to show that Defendants retaliated against her under the FMLA as a matter of law. Nor does the FMLA provide for recovery of punitive damages. The Court will therefore issue judgment in Defendant's favor on Plaintiff's Count Two for FMLA retaliation as well as her claim for punitive damages under the FMLA. However, genuine disputes of material fact remain regarding whether Plaintiff violated the Non-

Solicitation Agreement when RISE lost C.B. as a client. This calls into question whether Defendants can show they had a legitimate reason for terminating Plaintiff that is independent from her use of leave protected by the FMLA and AFWHFA. Thus, Plaintiff's Count One for FMLA interference and Count Three for AFWHFA retaliation await to be resolved at trial.

**IT IS HEREBY ORDERED** that Defendants Arise Incorporated f/k/a Rise Services, Inc. d/b/a Rise Services, Jessica Reed, and Angela Pelton's Motion for Summary Judgment (Doc. 34) is **GRANTED in part** as to Plaintiff Staci Martin's Count Two for FMLA retaliation and claim for punitive damages under the FMLA.

**IT IS FINALLY ORDERED** that in light of the denial of summary judgment on Plaintiff's Count One for FMLA interference and Count Three for AFWHFA retaliation, the parties are directed to comply with Paragraph 11 of the Rule 16 Scheduling Order (Doc. 19 at 6–7) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 27th day of June, 2023.

Honorable Diane J. Humetewa
United States District Judge